UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KALIMAH ALI,

                              Plaintiff,

                    -v.-

DAINESE USA, INC., ALBERTO RUBIO,
and HECTOR HERNANDEZ,

                              Defendants.

---

19 Civ. 2422 (KPF)

**AMENDED OPINION
AND ORDER**

KATHERINE POLK FAILLA, District Judge:

　　More than two weeks after fact discovery closed in this employment

discrimination case, Plaintiff Kalimah Ali revealed that she had failed to

disclose documents that she had repeatedly represented either were not in her

possession or had previously been produced.  These documents included:

(i) text messages Plaintiff exchanged with third parties concerning the facts of

her case; (ii) emails informing Plaintiff that she had not received various jobs

for which she had applied following her termination from Dainese;

(iii) documents related to Plaintiff's prior civil actions; and (iv) records

concerning Plaintiff's prior name change.  Proceeding under Federal Rule of

Civil Procedure 37, Defendants Dainese USA, Inc., Alberto Rubio, and Hector

Hernandez filed the instant motion for discovery sanctions seeking dismissal of

the case or certain lesser sanctions.  For the reasons that follow, the Court

grants Defendants' motion in part.[1]

---

[1]        The Court previously issued an Opinion and Order, dated October 29, 2021, granting in
        part Defendants' motion for discovery sanctions (the "October 29 Opinion").  (Dkt. #72).
        Among other things, the October 29 Opinion imposed a permissive adverse inference
        instruction in response to Plaintiff's deletion of certain electronic job rejection notices.

**BACKGROUND**[2]

Plaintiff initiated this case on March 18, 2019, alleging that Defendants Rubio and Hernandez sexually harassed her and that Defendant Dainese constructively discharged her after she alerted her supervisors to Rubio's and Hernandez's conduct.  (Dkt. #1).  After an unsuccessful mediation, the parties engaged in nearly a year's worth of fact discovery that was marked by Plaintiff's

---

(Dkt. #72).  Upon further review, the Court concludes that such a sanction is unavailable under Federal Rule of Civil Procedure 37(e).  "Rule 37(e), which relates to electronically stored information, 'permits sanctions such as an adverse inference instruction or dismissal only in instances in which the spoliating party acted with "intent to deprive another party of the information's use in the litigation."'"  *King* v. *Wang*, No. 14 Civ. 7694 (LJL), 2021 WL 5495799, at *1 n.1 (S.D.N.Y. Nov. 23, 2021) (quoting *Leidig* v. *Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017)).  Here, as discussed in greater detail later in this Opinion, Defendants have not shown that Plaintiff deleted the rejection notices with the intent to deprive Defendants of the use of the notices in this litigation.  Accordingly, an adverse inference sanction may not be imposed under Rule 37(e).  *See Medidata Sols., Inc.* v. *Veeva Sys., Inc.*, No. 17 Civ. 589 (LGS), 2021 WL 4902462, at *2 (S.D.N.Y. Sept. 22, 2021) ("Plaintiffs have not shown by a preponderance of the evidence that Veeva acted with the intent to deprive Plaintiffs of the [electronic information], as they must to justify the sanction of an adverse inference.").

Exercising its discretion under Federal Rule of Civil Procedure 54, the Court reconsiders *sua sponte* the October 29 Opinion and issues this superseding Opinion and Order.  *See* Fed. R. Civ. P. 54(b); *Hassan* v. *Fordham Univ.*, 533 F. Supp. 3d 164, 166 (S.D.N.Y. 2021) ("Interlocutory orders are 'subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain.'" (quoting *Grace* v. *Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000))); *see also Chartis Seguros Mexico, S.A. de C.V.* v. *HLI Rail Rigging, LLC*, No. 11 Civ. 3238 (ALC) (GWG), 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015) (exercising discretion under Rule 54 to reconsider *sua sponte* prior opinion and order).  This Opinion and Order departs from the October 29 Opinion only insofar as it does not impose an adverse inference sanction for Plaintiff's deletion of the electronic job rejection notices.

[2]   The facts stated herein are drawn from: (i) Plaintiff's Complaint (Dkt. #1); (ii) the Declaration of Jason Habinsky filed in support of Defendants' motion for sanctions ("Habinsky Decl." (Dkt. #65)) and the exhibits attached thereto; (iii) the Affirmation of Kalimah Ali ("Pl. Aff." (Dkt. #69-1)); and (iv) the Reply Declaration of Jason Habinsky (Dkt. #71) and the exhibits attached thereto.

For ease of reference, the Court refers to Defendants' Memorandum of Law in support of their motion for sanctions as "Def. Br." (Dkt. #66); Plaintiff's Memorandum of Law in opposition to Defendants' motion for sanctions as "Pl. Opp." (Dkt. #69); and Defendants' Reply Memorandum of Law in further support of their motion for sanctions as "Def. Reply" (Dkt. #70).

consistent failure to meet the Court's deadlines and that culminated in Defendants' motion for discovery sanctions. In the sections that follow, the Court provides a detailed account of Plaintiff's actions over that period.

## A. The Initial Case Management Plan

On December 13, 2019, the Court held an initial pretrial conference at which counsel for both parties were present. (*See* Minute Entry for Dec. 13, 2019). Following the conference, the Court endorsed the parties' proposed Civil Case Management Plan and Scheduling Order (the "Initial CMP"), establishing the initial discovery deadlines in this matter. (Dkt. #28). Pursuant to the Initial CMP, fact discovery was to conclude by April 12, 2020, and expert discovery by May 27, 2020. (*Id.* at 2). The Court's endorsement of the Initial CMP stated that the "Order may not be modified or the dates herein extended, except by further Order of this Court for good cause shown." (*Id.* at 8).

## B. The First Extension of the Discovery Deadlines

In April 2020, the Court granted an extension of the parties' discovery deadlines. On April 24, the parties filed a joint letter requesting a five-month extension of the discovery deadlines specified in the Initial CMP, moving the end of fact discovery from April 12, 2020, to September 9, 2020, and the end of expert discovery from May 27, 2020, to October 26, 2020. (Dkt. #29). The parties attributed the need for these extensions to "factors including the current COVID-19 pandemic[.]" (*Id.* at 1). On April 27, the Court granted the parties' request. (Dkt. #30). The Court warned that "[n]o further discovery

extensions [would] be granted absent good cause shown." (*Id.*).  A second CMP reflecting the extended deadlines was entered that same day.  (Dkt. #31).

### C.    Defendants' Deficiency Letter

On August 10, 2020, nearly four months after the Court granted the parties' request to extend the discovery deadlines and one month prior to the close of fact discovery, Defendants sent Plaintiff a deficiency letter listing documents that Defendants had requested but Plaintiff had failed to produce. (Habinsky Decl., Ex. D (the "Deficiency Letter")).  As relevant here, the missing documents included those related to Plaintiff's: (i) communications with third parties regarding the facts of the case; (ii) efforts to find employment from October 29, 2017, to the present; (iii) other civil litigations; and (iv) prior name change.  (*Id.* at 2).  Defendants noted that Plaintiff's failure to produce the documents "ha[d] been raised with [her] several times" and, indeed, had prevented them from deposing Plaintiff as scheduled in March.  (*Id.* at 1).

### D.    The Second Extension of the Discovery Deadlines

In September 2020, the Court granted a second extension of the discovery deadlines.  On September 8, the day before fact discovery was scheduled to close, Plaintiff, with Defendants' consent, filed a letter motion requesting a 60-day extension of the amended discovery deadlines.  (Dkt. #39). Plaintiff revealed in her letter that she had failed to conduct four noticed depositions and was unprepared to sit for her own deposition (scheduled for the following day) because she had "not yet completed her document production in this case."  (*Id.* at 1).  Plaintiff stated that counsel for both

parties had "met and conferred regarding the deficiencies in Plaintiff's production" and had "agreed upon categories of documents that Plaintiff will produce on or before September 23, 2020 to the extent such documents are in Plaintiff's possession, custody, or control." (*Id.*).  Plaintiff also noted that the parties had agreed to the proposed revised discovery deadlines "with the understanding that Plaintiff would have a final opportunity to comply with her outstanding discovery obligations in lieu of Defendants seeking the Court's intervention." (*Id.*).

On September 9, 2020, the Court entered the Order that provides the basis for Defendants' present motion for discovery sanctions.  (Dkt. #40 (the "September 9 Order")).  The September 9 Order granted the parties' request for a 60-day discovery extension, extending the fact discovery deadline from September 9, 2020, to November 6, 2020, and the expert discovery deadline from October 26, 2020, to December 21, 2020.  (*Id.* at 1).  By this point, the deadlines for fact and expert discovery had been extended nearly seven months from the dates first set in the parties' Initial CMP.  (*See* Dkt. #28).  The Court stressed in the September 9 Order that "[n]o further discovery extensions [would] be granted under any circumstances," noted "its dismay with Plaintiff's disregard for the Court's deadlines," and "advise[d] [her] counsel that this will not be tolerated in other cases." (September 9 Order at 2).

## E.     Defendants' Pre-Motion Letter and Plaintiff's Opposition

On September 30, 2020, Defendants filed a pre-motion letter stating their intent to file a motion for discovery sanctions against Plaintiff.  (Dkt. #41

("Defendants' Pre-Motion Letter")). Defendants' Pre-Motion Letter describes in considerable detail how Plaintiff's failure to adhere to her discovery obligations required the parties to seek the two prior discovery extensions. (*Id.* at 1-2).

Defendants' Pre-Motion Letter revealed that the parties' first request for an extension of the discovery deadlines was caused not only by pandemic-related exigencies, but also by Plaintiff's failure to complete her document production prior to her deposition. (Defendants' Pre-Motion Letter at 1). Plaintiff's deposition was first noticed for February 11, 2020, but was rescheduled for March 12, 2020, after it became clear that she had failed to complete her document production or comply with her other discovery obligations. (*Id.*). Plaintiff then made an incomplete document production on February 14, 2020. (*Id.*). On March 2, 2020, counsel for both parties conferred to discuss Plaintiff's outstanding discovery. (*Id.*). Plaintiff's counsel represented during the conversation that Plaintiff would supplement her document production prior to her March 12 deposition, but she then failed to produce any additional documents and Defendants were forced to postpone her deposition indefinitely. (*Id.*). These events led the parties to seek their first discovery extension on April 24, 2020. (*Id.*).

Despite the Court's warning that "[n]o further discovery extensions [would] be granted absent good cause shown" (Dkt. #30), Plaintiff failed to complete her remaining document production following the Court's first extension of the discovery deadlines (Defendants' Pre-Motion Letter at 1). On August 10, 2020, Defendants sent Plaintiff the Deficiency Letter listing the

6

documents that Plaintiff had failed to produce.  (*See* Deficiency Letter).  By September 8, 2020, the day before the extended fact discovery deadline, Plaintiff still had not produced any of the documents described in the Deficiency Letter.  (Defendants' Pre-Motion Letter at 1).  In exchange for Defendants' consent to seek a second extension of the discovery deadlines, Plaintiff agreed to produce all outstanding documents by September 23, 2020.  (*Id.* at 1-2).  As described earlier, the Court granted the parties' extension request in its September 9 Order, but made clear that "[n]o further discovery extensions [would] be granted under any circumstances."  (September 9 Order at 2).

Defendants' Pre-Motion Letter revealed that Plaintiff's disregard for the Court's deadlines persisted following the Court's September 9 Order.  On September 23, 2020, the date by which Plaintiff had agreed to produce the documents listed in the Deficiency Letter, Plaintiff made an incomplete supplemental production (the "Supplemental Production").  (Defendants' Pre-Motion Letter at 2).  Plaintiff's Supplemental Production, which totaled 38 pages, included "Plaintiff's resume, emails sent to potential employers regarding open positions, and emails with Defendants[.]"  (*Id.*).  The Supplemental Production did not, however, include documents related to Plaintiff's communications with third parties or her prior civil actions.  (*Id.*).

Defendants attached two exhibits to their Pre-Motion Letter that documented their efforts to obtain the outstanding documents in Plaintiff's possession.  Exhibit 1 included an email sent by defense counsel to Plaintiff's

counsel on September 8, 2020, at 4:54 p.m., memorializing Plaintiff's agreement to produce the documents previously identified in the Deficiency Letter. (Defendants' Pre-Motion Letter, Ex. 1). Exhibit 2 included an email sent by Plaintiff's counsel on September 23, 2020, at 9:26 p.m., stating that he "apologize[d] for sending [the Supplemental Production] so late, but this was all I was able to obtain from my client. I was hoping to receive additional documents this evening. … [I] will send any additional documents when I receive them." (*Id.*, Ex. 2). As of the date of Defendants' Pre-Motion Letter, Plaintiff had not made any subsequent disclosures of documents described in the two emails. (*Id.* at 2).

Defendants argued in their Pre-Motion Letter that the combination of Plaintiff's persistent failure to produce the outstanding documents and her refusal to sit for her noticed deposition warranted "severe sanctions." (Defendants' Pre-Motion Letter at 3). Defendants stated that they intended to move to dismiss Plaintiff's case in its entirety or, in the alternative, for the Court to (i) preclude Plaintiff from offering evidence related to the missing categories of documents; (ii) order that it be taken as true for the purposes of the case that Plaintiff provided false information on an employment application; and (iii) order Plaintiff to pay Defendants' reasonable attorneys' fees and costs incurred in attempting to obtain Plaintiff's outstanding discovery. (*Id.*).

On October 5, 2020, Plaintiff filed a letter opposing Defendants' contemplated motion for discovery sanctions. (Dkt. #42). Plaintiff's letter addressed several statements made in Defendants' letter, but primarily

disputed Defendants' contention that she had failed to produce certain outstanding documents.  (*Id.* at 1).  Plaintiff's letter repeatedly declared that she had satisfied her discovery obligations, explaining that "she [was] not in possession of the outstanding documents requested — Plaintiff produced what she has within the time frame agreed upon by counsel."  (*Id.*).  Emphasizing this point a second time, Plaintiff remarked that "Plaintiff is not willfully noncompliant; she cannot produce what she does not possess.  That being said, Plaintiff did produce what she possessed within the timeframe agreed upon."  (*Id.* at 1-2).  Plaintiff argued that her production of the documents in her possession weighed against the imposition of sanctions.  (*Id.* at 3).

The Court acknowledged receipt of the parties' letters on October 14, 2020, and directed them to be prepared to discuss the issues raised in their submissions at a conference scheduled for November 12, 2020.  (Dkt. #43).  The Court also "invited" the parties "to propose modifications to the existing case management plan, including whether fact discovery deadlines should extend through the period currently set for expert discovery."  (*Id.* at 2).

## F.    Plaintiff's Request for a Third Extension of the Discovery Deadlines

On October 29, 2020, eight days before the close of the twice-extended fact discovery deadline, Plaintiff filed a letter requesting a third extension of the discovery deadlines in this case.  (Dkt. #44).  In contrast with the first two extension requests, Defendants did not consent to this third request.  (*Id.* at 1).  Plaintiff indicated that her letter was submitted in response to the Court's October 14, 2020 endorsement inviting the parties to propose modifications to

their CMP. (*Id.*). Echoing statements made in her letter requesting the second discovery extension, Plaintiff claimed that a third discovery extension was necessary because she had not completed her four noticed depositions of defense witnesses or sat for her own deposition. (*Id.*). Plaintiff proposed a modified discovery schedule that would have extended the fact discovery deadline from November 6, 2020, to December 21, 2020, and the expert discovery deadline from December 21, 2020, to February 1, 2021. (*Id.*).

Defendants filed a letter opposing Plaintiff's request for a third discovery extension that same day. (Dkt. #45). Defendants stated that Plaintiff had not contacted Defendants to schedule their depositions, and that Plaintiff had failed to provide a date prior to the close of fact discovery when she was available to sit for her own deposition. (*Id.* at 1). Defendants then explained that they had decided not to seek further extensions of the discovery deadlines, opting instead to depose Plaintiff notwithstanding their belief that she had not produced all of the relevant documents in her possession. (*Id.*). Defendants stated, however, that the parties had failed to set a date for Plaintiff's deposition because Plaintiff's counsel had indicated that he had no availability prior to the November 6, 2020 deadline. (*Id.*). As a result, Defendants indicated that they were prepared to address Plaintiff's failures to adhere to the CMP at the upcoming pretrial conference and argued that the discovery deadlines should only be extended "for the sole purpose of conducting Plaintiff's deposition, which Plaintiff continues to refuse to schedule." (*Id.* at 3).

The Court denied Plaintiff's motion for a third extension of the discovery deadlines on October 30, 2020.  (Dkt. #46).  The Court explained that, contrary to the understanding Plaintiff expressed in her letter, the Court's October 14, 2020 endorsement was not intended to allow Plaintiff additional time to conduct discovery, but rather "to provide Plaintiff with a final opportunity to comply with her document production obligations and to sit for a deposition before the Court would consider Defendants' motion for sanctions."  (*Id.* at 2).  The Court noted that "[i]t appears that Plaintiff has not made any effort to meet the existing deadlines, to Defendants' detriment."  (*Id.*).  Accordingly, the Court ordered Plaintiff to complete her document production by the existing November 6, 2020 fact discovery deadline, and to sit for a deposition by the end of November.  (*Id.*).  The Court explicitly stated that "[a]ll other discovery deadlines remain in effect, including the November 6, 2020 deadline for Plaintiff to take fact witness depositions."  (*Id.*).  The Court also adjourned the pretrial conference from November 12, 2020, to December 4, 2020.  (*Id.*).

## G.    The November 2, 2020 Emergency Conference

On October 30, 2020, the same day the Court issued its Order denying Plaintiff's request for a third extension of the discovery deadlines, Plaintiff filed a letter requesting an "emergency telephonic conference and reconsideration of" that same Order.  (Dkt. #47).  Plaintiff's letter made two points.  *First*, Plaintiff disputed the Court's reference to her failure to produce outstanding documents, repeating her earlier statement that "she [was] not in possession of the outstanding documents requested — *Plaintiff produced what she had within*

11

*the time frame agreed upon by counsel.*" (*Id.* at 1 (emphasis in original)). *Second*, Plaintiff argued that her motion was consistent with the Court's invitation to the parties to propose modifications to their CMP, and that an extension was needed because Plaintiff had not completed Defendants' or her own depositions due to scheduling issues. (*Id.*). Based on these arguments, Plaintiff moved for reconsideration of the Court's prior decision. (*Id.*).

On November 2, 2020, the Court granted Plaintiff's request for an emergency conference (Dkt. #48), and held a telephonic conference attended by counsel for both parties that same day (*see* Minute Entry for Nov. 2, 2020). The Court began the conference by hearing from Defendants. (*See* Dkt. #50 (Transcript of Nov. 2, 2020 Conference ("Nov. 2 Tr."))). Defendants explained that Plaintiff had produced approximately 100 pages of documents as part of her initial disclosures (*id.* at 4:16-17), and only 38 additional pages as part of her Supplemental Disclosure (*id.* at 5:22-24). Defendants maintained that they believed Plaintiff had in her possession, but had not produced, additional documents related to each of the categories identified in their Deficiency and Pre-Motion Letters. (*Id.* at 22:21-24:8).

After hearing from Defendants, the Court turned to Plaintiff. Plaintiff did not dispute that her initial disclosures contained approximately 100 pages of documents (Nov. 4 Tr. 25:2-3), or that her Supplemental Disclosure contained approximately 38 pages (*id.* at 27:14-18). Instead, Plaintiff stressed that she had produced all outstanding documents in her possession. (*Id.* at 35:23-36:4). On this point, Plaintiff's counsel expressed his belief that Plaintiff's case

12

was "not a document heavy-case.  This is a sexual harassment claim, and a lot of the allegations in the complaint are of a face-to-face conversation that [Plaintiff] had with her supervisors."  (*Id.* at 25:11-15).

Following the November 2, 2020 emergency conference, the Court issued an Order amending its prior Order denying Plaintiff's request for a third discovery extension.  (Dkt. #49).  Although the Court noted that it "continue[d] to believe that" its prior Order "was justified and reasonable given Plaintiff's persistent inattention to discovery obligations and deadlines," the Court revised the Order to allow Plaintiff to take one deposition in the month of November. (*Id.* at 2-3).  The Court concluded by stating that "[i]n all other respects, the existing discovery deadlines remain in effect."  (*Id.* at 3).  As a result, both parties were permitted to take one deposition during the month of November, but fact discovery would otherwise conclude on November 6, 2020.  (*See id.*).

## H.   **Plaintiff's Deposition**

Plaintiff's deposition was eventually taken on November 23, 2020. (Habinsky Decl., Ex. N ("Pl. Dep.")).  Of significance to the instant motion, Plaintiff's testimony established that she had failed to disclose numerous documents that were currently or formerly in her possession and that fell within the categories listed in Defendants' Deficiency and Pre-Motion Letters. (*See* Deficiency Letter; Defendants' Pre-Motion Letter).  *First*, with respect to Plaintiff's job search, Plaintiff testified that she had deleted emails informing her that she had not been awarded numerous jobs for which she had applied:

> Q.   Do you have any documentation regarding these jobs that you applied for?

13

> A. I have some E-mails that said you weren't considered. Some of those E-mails I forwarded to my attorney, but most of them I just, after I got the ... declination E-mail, I just deleted it.

(Pl. Dep. 104:14-20). Plaintiff testified that she did not "recall the number" of emails she had deleted (*id.* at 106:25), but that she had unsuccessfully applied for hundreds of jobs (*id.* at 105:20-106:7).

*Second*, Plaintiff confirmed that she had failed to disclose text messages she had exchanged with two friends about her work at Dainese and the facts of the case. (*See* Pl. Dep. 12:24-14:14 (Gilbert Rios); *id.* at 17:12-19:21 (Brent Graham)). Although Plaintiff testified that she had shared her messages with Mr. Rios and Mr. Graham with her counsel prior to her deposition (*id.* at 12:24-14:14; *id.* at 16:16-17:11), she later clarified that she had not in fact shared them until afterwards (Pl. Aff. ¶ 2). Plaintiff also admitted that there were at least three other individuals with whom she spoke about her time at Dainese. (*See id.* at 26:14-27:16 (Sharon Stovall); *id.* at 34:7-35:12 (Yusuf Ramadan); *id.* at 32:23-34:2 (Tasha Holley)). Plaintiff noted that she was not sure if she had exchanged text messages, as opposed to phone calls, with these three individuals. (*See, e.g., id.* at 27:10-12, 32:19-22, 34:17-22). For example, she testified that she was "not too sure if" she had exchanged text messages with Sharon Stovall (*id.* at 27:11) or Tasha Holley (*id.* at 33:10-12). Similarly, with respect to Yusuf Ramadan, Plaintiff testified that, although the two "speak almost every day" (*id.* at 35:2), she did not believe that she had texted with him about events related to this case (*id.* at 35:13-25).

*Third*, despite Plaintiff's counsel's statement at the November 2, 2020 emergency conference that Plaintiff had not been involved in any prior civil litigation (Nov. 2 Tr. 54:23-55:9), Plaintiff testified that she had in fact filed several prior lawsuits (Pl. Dep. 46:8-61:11). These prior cases included: (i) a defamation lawsuit (*id.* at 48:13-50:16); (ii) two personal injury suits (*id.* at 46:17-47:9, 47:13-48:15); and (iii) a discrimination suit (*id.* at 58:21-61:11). Plaintiff further testified that she possessed documents related to the defamation lawsuit but had chosen not to disclose them:

> Q.   Did you produce [the documents] to your counsel?
>
> A.   No.
>
> Q.   Did your counsel ask you to produce these documents?
>
> A.   Yes.
>
> Q.   And why didn't you produce them to him?
>
> A.   Because I don't believe this has anything to do with this situation, this case.
>
> Q.   Okay. So this was your decision?
>
> A.   Yes.

(Pl. Dep. 53:12-23). There is no indication that Plaintiff was asked or stated whether she had documents related to her other lawsuits.

*Fourth*, Plaintiff confirmed the existence of documents related to her name change that she had not disclosed to Defendants. (Pl. Dep. 44:9-19). Plaintiff stated that the documents were sealed (*id.* at 44:22-23), but that she had shared them with her attorney (*id.* at 44:24-45:2).

15

I.      **The December 4, 2020 Pretrial Conference**

On December 3, 2020, the parties submitted a joint letter summarizing the status of the case.  (Dkt. #52).  The parties' letter raised two sets of issues. *First*, the letter indicated that the parties disputed whether the expert discovery deadline had passed.  (*Id.* at 1).  *Second*, and as relevant here, the letter stated that fact discovery had closed, but that Defendants believed that Plaintiff's deposition had only confirmed her failure to produce responsive documents such that they continued to seek discovery sanctions against her.  (*Id.* at 1-2).

The next day, the Court held a telephonic conference, which was attended by counsel for both parties.  (*See* Minute Entry for Dec. 4, 2020; *see also* Dkt. #58 (Transcript of Dec. 4, 2020 Hearing ("Dec. 4 Tr."))).  After addressing the parties' expert discovery issue, the Court turned its attention to Defendants' claim about Plaintiff's deposition testimony.  (Dec. 4 Tr. 26:11-20). Defendants argued that, contrary to Plaintiff's prior claims that she had produced all outstanding documents in her possession, her deposition revealed "that there's an extensive number of documents squarely responsive and squarely relevant to this litigation which [s]he hasn't produced[.]"  (*Id.* at 27:5-11).  In particular, Defendants stated that the outstanding documents included: (i) text messages exchanged between Plaintiff and her friends (*id.* at 27:12-21); (ii) documents related to Plaintiff's prior litigation (*id.* at 30:8-12); and (iii) an audio recording of a conversation Plaintiff had with a coworker (*id.* at 31:23-32:8).  Defendants did not reference at the conference the documents related to Plaintiff's job search or name change.

In sharp contrast to his representations made at the November 4, 2020 emergency conference, Plaintiff's counsel conceded that Plaintiff had not produced all the documents in her possession and, indeed, that Plaintiff had not even given the outstanding documents to her counsel.  (Dec. 4 Tr. 32:15-33:25).  On this point, Plaintiff's counsel confirmed that (i) Plaintiff had sent text messages to several friends but had not disclosed the messages to counsel (*id.* at 32:15-19); (ii) Plaintiff had admitted to filing civil actions but had not produced any documents related to the cases to counsel (*id.* at 33:14-25); and (iii) an indecipherable audio recording of Plaintiff's conversation with a coworker existed and was in counsel's possession (*id.* at 34:4-9).

The Court concluded the December 4, 2020 conference by discussing next steps in the case.  At the Court's suggestion, the parties agreed to defer both the Court's decision on their expert discovery disagreement and the establishment of a briefing schedule for Defendants' contemplated motion for sanctions until after the parties participated in a settlement conference before Magistrate Judge Wang.  (Dec. 4 Tr. 19:1-21:20; 35:2-14).  Later that same day, the Court issued an Order of Reference directing the parties to schedule a settlement conference by the end of January 2021.  (Dkt. #54).

**J.  The March 17, 2021 Pretrial Conference**

The parties next appeared before the Court for a telephonic pretrial conference on March 17, 2021.  (*See* Minute Entry for March 17, 2021).  The Court began the conference by noting that it had been informed by Magistrate Judge Wang that the parties had been unable to settle the matter.  (Dkt. #62

(Transcript of March 17, 2021 Conference ("March 17 Tr."))).  The parties
confirmed that their settlement discussions had been unfruitful.  (*Id.* at 3:1-3).

As relevant here, the Court next addressed Defendants' contemplated
motion for discovery sanctions.  Defendants stated that, since Plaintiff's
deposition testimony confirmed that she possessed undisclosed documents,
Plaintiff had made a subsequent supplemental production.  (March 17 Tr. 17:7-
9).  This supplemental production was made on January 22, 2021 — nearly
three months after Plaintiff's deposition and more than three months after the
close of fact discovery — and comprised 14 pages of text messages Plaintiff had
exchanged with Rios and Graham.  (*Id.* at 17:7-12).  The production did not
contain any documents related to Plaintiff's (i) prior litigation, (ii) search for
employment, or (iii) name change.  (*Id.* at 17:19-19:18).  Defendants noted that
the 14 pages of text messages included texts from only two of the five friends
referenced in Plaintiff's deposition testimony, and that the disclosed texts
largely postdated her employment at Dainese.  (*Id.* at 17:11-16).  Defendants
stated that they believed Plaintiff either continued to possess undisclosed text
messages or had deleted such messages.  (*Id.* at 17:16-18).  After hearing from
Defendants, the Court stated that it would set a briefing schedule for
Defendants' motion in a subsequent order.  (*Id.* at 24:15-18).

## K.    The March 18, 2021 Scheduling Order

On March 18, 2021, the Court issued an Order directing Defendants to
file their opening motion for discovery sanctions by April 19, 2021.  (Dkt. #61).
The Court ordered Plaintiff to file her opposition by May 19, 2021, and

18

Defendants to file their reply by June 2, 2021.  (*Id.* at 1-2).  The Court explained that it would set a briefing schedule for Defendants' contemplated motion for summary judgment if the case remained open after it resolved Defendants' motion for discovery sanctions.  (*Id.* at 2).

## L.   Defendants' Motion for Discovery Sanctions and Plaintiff's Final Supplemental Production

On April 19, 2021, Defendants filed their motion for discovery sanctions. (Dkt. #64-66).  On May 14, 2021, Plaintiff moved for a one-week extension of her time to file an opposition to Defendants' motion (Dkt. #67), which the Court granted that same day (Dkt. #68).  On May 25, 2021, the day before her opposition was due, Plaintiff produced 233 additional pages of documents to Defendants, including documents related to Plaintiff's prior defamation lawsuit and her efforts to find employment.  (Dkt. #69 at 6; Dkt. #70 at 4).  Plaintiff filed her opposition papers the following day (Dkt. #69), and Defendants filed their reply on June 9, 2021 (Dkt. #70-71).  Accordingly, Defendants' motion is fully briefed and ripe for the Court's consideration.

## DISCUSSION

## A.   Legal Standards Under Federal Rules of Civil Procedure 16 and 37

Federal Rule of Civil Procedure 16 provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney … fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).[3]  Rule 37 provides, in turn, that "just

---

[3]      Although both parties cite exclusively to Federal Rule of Civil Procedure 37 (Def. Br. 14-16; Pl. Opp. 6-7), the Court finds that Defendants' motion must be resolved under Rule

orders" may include, among other things, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to" imposing such "just orders," the court must order the disobedient "party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

"Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co.* v. *Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc.* v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

---

16 because it seeks sanctions based on Plaintiff's noncompliance with a scheduling order rather than a discovery order. The Court's resolution of Defendants' motion under Rule 16 rather than Rule 37 has minimal practical effect, however, because both Rules impose substantially the same standards. *See Houghton* v. *Culver*, 467 F. App'x 63, 65 (2d Cir. 2012) (summary order) (observing that standards developed under Rule 37(b)(2) are used to evaluate a court's dismissal under Rule 16); *Carter* v. *Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005) (summary order) (same); *Camara* v. *Daise*, No. 98 Civ. 808 (RMB) (RLE), 2001 WL 263006, at *5 (S.D.N.Y. Mar. 9, 2001) (finding that defendant should have brought its motion under Rule 16 rather than Rule 37, but noting that "[a]s a practical matter … the same standards govern dismissal under both rules").

Although the Court has "wide discretion in imposing sanctions under Rule 37," *Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted), "[t]here are two basic limitations" that cabin its discretion. *Daval Steel Prods.* v. *M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991); *accord Sentry Ins. a Mut. Co.* v. *Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) (summary order). *First*, "the sanctions must be 'just[.]'" *M/V Fakredine*, 951 F.2d at 1366. *Second*, the sanctions "must relate to the particular claim to which the discovery order was addressed." *Id.*

## B. The Court Grants in Part Defendants' Motion for Discovery Sanctions

Defendants move for the dismissal of Plaintiff's case or, in the alternative, the preclusion of certain evidence related to the job rejection notices she deleted and the text messages she failed to disclose until after the close of fact discovery. (Def. Br. 2, 19). In either event, Defendants also seek to recover the attorneys' fees and costs they incurred in pursuing discovery sanctions. (*Id.* at 23). For the reasons that follow, the Court grants in part Defendants' motion.

### 1. Plaintiff Violated the Court's September 9 Order

Before a court may sanction a party under Rule 16, it must find that the party "fail[ed] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C); *see also Salahuddin* v. *Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (noting in the analogous context of Rule 37 that "[t]he plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed").

Here, the Court finds that Plaintiff failed to comply with the Court's September 9 Order, which granted the parties a second extension of the

21

discovery deadlines established in their CMP.  (September 9 Order).  Pursuant

to that Order, both parties were required to complete fact discovery by

November 6, 2020.  (*Id.* at 1).  Notwithstanding this deadline, Plaintiff failed to

disclose on or before November 6, 2020: (i) text messages she exchanged with

Rios and Graham; (ii) rejection notices she received from prospective

employers; and (iii) documents related to her prior civil actions.  (Pl. Opp. 4-5

(stating that Plaintiff produced four screenshots of text message conversations

on November 23, 2020); *id.* at 5 (stating that Plaintiff produced fourteen

additional screenshots of text message conversations with Graham as well as a

recording of a different conversation with another friend on January 21, 2021);

*id.* at 6 (stating that Plaintiff produced 235 pages of documents, including

documents related to her efforts to seek employment, a prior lawsuit for

defamation, and her emotional distress, on May 25, 2021)).[4]

　　　Plaintiff's attempt to excuse her conduct under Federal Rule of Civil

Procedure 26 is unavailing.  Plaintiff argues that sanctions are inappropriate

---

[4]     The Court declines to find that Plaintiff violated its September 9 Order by failing to
disclose (i) her communications with Sharon Stovall, Yusuf Ramadan, or Tasha Holley
(Def. Br. 11), or (ii) documents related to her name change (*id.* at 13).  *First*, the record
does not establish that Plaintiff possesses undisclosed documents relating to her
conversations with Stovall, Ramadan, or Holley.  As discussed earlier, Plaintiff testified
at her deposition that she did not believe she exchanged relevant text messages with
these three individuals.  (Pl. Dep. 27:7-16, 33:8-12, 35:13-25).  *Second*, Plaintiff stated
from the outset of this case that she would not produce documents related to her name
change.  (Pl. Opp. 2; *see also* Pl. Aff. ¶ 5).  Defendants never filed a motion to compel
Plaintiff to produce the documents, *see* Fed. R. Civ. P. 37(a), and the Court never
ordered her to produce them.  (*See id.*).  Although the Court will not sanction Plaintiff
for her withholding of the documents related to her prior name change, the Court will
order Plaintiff to provide *in camera* (i) the documents related to her name change; and
(ii) a sworn affirmation from her counsel stating whether Plaintiff was involved in any
litigation under her previous name.  This will allow the Court to confirm that Plaintiff is
not withholding documents related to prior litigations filed under her prior name.

here because her late and incomplete disclosures were properly made under
Rule 26.  (Pl. Opp. 7).  In this regard, Rule 26 provides that a party may
supplement their disclosure "in a timely manner if the party learns that in
some material respect the disclosure or response is incomplete or incorrect,
and if the additional or corrective information has not otherwise been made
known to the other parties during the discovery process or in writing[.]"  Fed.
R. Civ. P. 26(e)(1)(A).

Here, Plaintiff did not make timely supplemental disclosures as permitted
by Rule 26.  As stated above, Plaintiff completed the majority of her document
production several months after the November 6, 2020 deadline, including on:
(i) November 23, 2020 (Pl. Opp. 4); (ii) January 21, 2021 (*id.* at 5); and
(iii) May 25, 2021 (*id.* at 6).  Indeed, Plaintiff seeks credit for producing "almost
400 pages of responsive documents" in this case.  (*Id.* at 1).  Yet, by her own
admission, she produced more than half of those documents the day before she
filed her opposition to Defendants' motion for discovery sanctions — and more
than six months after the close of fact discovery.  (*Id.* at 6 (stating that Plaintiff
disclosed 235 pages of responsive documents on May 25, 2021)).  Plaintiff fails
to provide any persuasive reason for failing to disclose the documents prior to
the Court's deadline.  Thus, the Court rejects Plaintiff's argument that her
noncompliance with the Court's September 9 Order should be excused under
Rule 26.  *See Ritchie Risk-Linked Strategies Trading (Ir.), Ltd.* v. *Coventry First
LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012) ("Making a supplemental disclosure
nearly a year after the close of fact discovery is not 'timely,' by any definition.").

In light of Plaintiff's noncompliance with the Court's September 9 Order, the Court finds that sanctions are appropriate under Rule 16. As discussed in detail throughout this Opinion, Plaintiff's noncompliance with the September 9 Order was preceded by two extensions of the discovery deadlines, multiple exchanges with Defendants concerning the need to produce certain documents, and several warnings that Plaintiff's failure to comply with Court orders would not be tolerated. Courts in the Second Circuit have consistently imposed varying forms of sanctions for similar failures to comply with scheduling orders. *See, e.g.*, *Kourkounakis* v. *Russo*, 167 F. App'x 255, 257 (2d Cir. 2006) (summary order) (affirming imposition of $1,000 sanction for pattern of disregarding court's case management plan deadlines); *Norman* v. *Tod's S.p.A.*, No. 18 Civ. 875 (GHW), 2018 WL 2744791, at *3 (S.D.N.Y. June 7, 2018) (dismissing case under Rule 16(f) after plaintiff repeatedly failed to comply with the court's scheduling orders); *see also Vt. Teddy Bear Co.* v. *1-800 Beargram Co.*, 373 F.3d 241, 247 (2d Cir. 2004) (warning that "defendant should beware of possible sanctions available to the district court for his failure to comply with a scheduling order"); *Winter* v. *Pinkins*, No. 14 Civ. 8817 (RJS), 2017 WL 5496278, at *5 (S.D.N.Y. Feb. 17, 2017) (warning the parties "that failure to comply with the deadlines in the case management plan and scheduling order … may result in sanctions, including fines"). Accordingly, the Court finds that Plaintiff's noncompliance with its September 9 Order warrants sanctions.

### 2.    The Court Declines to Dismiss the Case

The Court turns next to selecting an appropriate sanction.  Defendants argue that "dismissal is the only appropriate remedy to address [Plaintiff's] behavior, prevent prejudice to Defendants, and deter similar behavior in the future." (Def. Br. 2).  In response, Plaintiff argues that dismissal is inappropriate because she did not intentionally withhold documents but rather made timely supplemental disclosures.  (Pl. Opp. 2).  While the Court does not credit many of Plaintiff's explanations, it declines to dismiss the case.

Courts consider several factors when deciding whether to dismiss a case under Rule 37.  *See Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).  These factors include: "[i] the willfulness of the non-compliant party or the reason for noncompliance; [ii] the efficacy of lesser sanctions; [iii] the duration of the period of noncompliance[;] and [iv] whether the non-compliant party had been warned of the consequences of noncompliance." *Funk* v. *Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017); *see also Lewis* v. *Marlow*, No. 17 Civ. 8101 (KMK), 2021 WL 2269553, at *5 (S.D.N.Y. June 3, 2021) (applying the factors); *Shnyra* v. *State St. Bank & Tr. Co.*, No. 19 Civ. 2420 (GHW), 2020 WL 6892078, at *11-12 (S.D.N.Y. Nov. 24, 2020) (same).

### a.    Plaintiff's Willful Noncompliance

The first factor the Court must consider is whether Plaintiff willfully violated the September 9 Order.  "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors

beyond the party's control." *Thompson* v. *Jamaica Hosp. Med. Ctr.*, No. 13 Civ. 1896 (RWS), 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015).  "Willful non-compliance is routinely found ... where a party has repeatedly failed to produce documents in violation of the district court's orders."  *Doe* v. *Delta Airlines, Inc.*, No. 13 Civ. 6287 (PAE), 2015 WL 798031, at *8 (S.D.N.Y. Feb. 25, 2015) (internal alterations and quotation marks omitted), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (summary order).

Here, the Court finds that Plaintiff's noncompliance was willful.  *First*, the Court's September 9 Order was clear.  The September 9 Order adopted the parties' proposed discovery deadlines and stated that "[n]o further discovery extensions will be granted under any circumstances." (September 9 Order at 2).  Thereafter, the Court repeatedly confirmed that the deadlines set in its September 9 Order were final and binding.  (*See* Dkt. #46 at 2 (ordering Plaintiff to complete document production and appear for her noticed deposition in the month of November and stating that "[a]ll other discovery deadlines remain in effect"); Dkt. #49 at 3 (allowing Plaintiff to take one deposition in the month of November and stating that "[i]n all other respects, the existing discovery deadlines remain in effect")).  Given both the clarity of the September 9 Order, as well as the Court's consistent refusal to deviate from its plain terms, Plaintiff was under an obvious duty to produce all discoverable documents in her possession on or before November 6, 2020.

*Second*, the record establishes that Plaintiff understood her obligations under the September 9 Order when she failed to abide by it.  Significantly, both

the timing and the contents of Plaintiff's required disclosures were proposed by the parties themselves.  The parties negotiated three separate sets of discovery deadlines in this case, including in their Initial CMP (Dkt. #28), their letter requesting the first extension of the discovery deadlines (Dkt. #29), and their letter requesting a second extension (Dkt. #39).  Plaintiff was thus unquestionably aware that fact discovery would close on November 6, 2020 — as best evidenced by the fact that she filed the motion requesting that date. (*Id.*).

Plaintiff also had clear notice of the documents that she was required to disclose prior to the November 6, 2020 deadline.  In her September 8, 2020 letter motion requesting the second extension of the discovery deadlines, Plaintiff represented that "[t]he parties have met and conferred regarding the deficiencies in Plaintiff's production and agreed upon categories of documents that Plaintiff will produce on or before September 23, 2020 to the extent such documents are in Plaintiff's possession, custody, or control."  (Dkt. #39 at 1). As discussed in Defendants' Deficiency and Pre-Motion Letters (*see* Deficiency Letter; Defendants' Pre-Motion Letter) and at the November 2, 2020 emergency conference (Nov. 2 Tr. 22:21-24:8), the December 4, 2020 conference (Dec. 4 Tr. 26:22-32:8), and the March 17, 2021 conference (March 17 Tr. 16:22-19:18), Plaintiff agreed to produce documents related to her: (i) text message conversations; (ii) prior litigation; and (iii) job search.  Through her discussions with Defendants and participation in these conferences, Plaintiff was clearly apprised of the documents she was required to disclose by November 6, 2020.

27

*Third* and finally, Plaintiff's noncompliance was within her control. Despite Plaintiff's various excuses for her failure to provide the text messages, litigation materials, and job rejection notices (*see* Pl. Opp. 1-2), the fact remains that Plaintiff agreed to produce each of these categories of documents, was ordered by the Court to complete her document production by November 6, 2020, and then failed to disclose the documents until November 23, 2020, January 21, 2020, and May 25, 2021 (*id.* at 4-6). Accordingly, the Court finds that Plaintiff willfully failed to comply with its September 9 Order.

Although the Court finds that Plaintiff's noncompliance was willful, it notes that Plaintiff has subsequently produced the outstanding documents in her possession.  (Pl. Opp. 4-6).  To be sure, Plaintiff's untimely productions do not excuse her deletion of documents related to her job search or her failure to comply with the Court's September 9 Order.  Such productions do, however, diminish the extent to which her willfulness weighs in favor of the drastic sanction of dismissal.  *See Thompson* v. *Jamaica Hosp. Med. Ctr.*, No. 13 Civ. 1896 (RWS), 2015 WL 3824254, at *4 (S.D.N.Y. June 19, 2015) ("Where a party has made a substantial effort to comply with a discovery order but was deficient in certain respects, lesser sanctions are generally appropriate."); *Phoenix Four, Inc.* v. *Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 1409413, at *7 (S.D.N.Y. May 23, 2006) (collecting cases where courts have declined to impose the sanction of dismissal where "Defendants have come forward with the evidence, even if after the close of discovery"); *see also*

28

*Kortright Cap. Partners LP* v. *Investcorp Inv. Advisers Ltd.*, 330 F.R.D. 134, 139 (S.D.N.Y. 2019) (declining to impose an adverse inference because, among other reasons, the noncompliant party "has come forward with the evidence").

> **b.    The Duration of Plaintiff's Noncompliance**

The Court next considers the duration of Plaintiff's noncompliance with its September 9 Order.  Courts within the Second Circuit have found that noncompliance lasting more than a few months weighs in favor of severe sanctions.  *See, e.g.*, *Juliao* v. *Charles Rutenberg Realty, Inc.*, No. 14 Civ. 808 (JFB) (AYS), 2018 WL 4502172, at *5 (E.D.N.Y. Sept. 20, 2018) (finding that noncompliance of nearly ten months favored dismissal); *Silva* v. *Cofresi*, No. 13 Civ. 3200 (CM) (JCF), 2014 WL 3809095, at *4 (S.D.N.Y. Aug. 1, 2014) (finding that a four-month delay in abiding by a court's order weighed in favor of sanctions); *Martin* v. *City of New York*, No. 09 Civ. 2280 (PKC) (JLC), 2010 WL 1948597, at *3 (S.D.N.Y. May 11, 2010) (dismissing case after finding that plaintiff's failure to comply with discovery orders had delayed the litigation by approximately three months); *but see Ayinola* v. *Lajaunie*, 855 F. App'x 30, 33 (2d Cir. 2021) (summary order) (finding that a delay of less than two months "weighs against the issuance of severe sanctions").  Here, Plaintiff continued to produce discoverable materials well after the close of fact discovery, including on the day before she filed her opposition to Defendants' motion for discovery sanctions (Pl. Opp. 6), causing at least a six-month delay of this case.

### c. Warnings That Noncompliance Would Result in Dismissal

The third factor the Court must consider is whether Plaintiff was warned that her failure to comply with the Court's order could result in the dismissal of her case. Although "[p]arties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril," *M/V Fakredine*, 951 F.2d at 1366, this factor is often identified "as the 'most critical' of the [four] factors," *Ruiz* v. *Citibank*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *3 (S.D.N.Y. Aug. 14, 2014) (internal alterations omitted) (quoting *World Wide Polymers, Inc.* v. *Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012)); *accord Mintz Fraade L. Firm, P.C.* v. *Brady*, No. 19 Civ. 10236 (JMF), 2021 WL 621206, at *6 (S.D.N.Y. Feb. 17, 2021).

Here, the Court never explicitly warned Plaintiff that her case could be dismissed, but it did repeatedly warn her that her failure to comply with the Court's scheduling orders would not be tolerated. (September 9 Order ("Plaintiff's disregard for the Court's deadlines ... will not be tolerated in other cases."); Dkt. #46 (noting that "[i]t appears that Plaintiff has not made any effort to meet the existing [discovery] deadlines, to Defendants' detriment"); Dkt. #49 (finding that "Plaintiff's persistent inattention to discovery obligations and deadlines" justified denying Plaintiff's request to depose six defense witnesses after the close of fact discovery); March 17 Tr. 21:11-14 (stating that the Court "imagine[d] there will be sanctions imposed" if Defendants' descriptions of Plaintiff's behavior were accurate)). Moreover, Plaintiff knew as early as September 30, 2020 — more than a month before the close of fact

discovery — that Defendants intended to seek discovery sanctions based on her failure to complete her document production.  (*See* Defendants' Pre-Motion Letter).  Based on this record, the Court finds that Plaintiff was not on notice that the Court could dismiss her case, but was aware that the Court was dissatisfied with her behavior and could sanction her for that behavior.

### d.   The Efficacy of Less Severe Sanctions

Finally, the Court must consider the efficacy of sanctions short of dismissal.  "It is well settled law in [the Second] Circuit that 'dismissal under Fed. R. Civ. P. 37 is a drastic penalty which should be imposed only in extreme circumstances,'" *Salahuddin*, 782 F.2d at 1132 (internal alterations omitted) (quoting *Isr. Aircraft Indus., Ltd.* v. *Standard Precision*, 559 F.2d 203, 208 (2d Cir. 1977)), and "usually after consideration of alternative, less drastic sanctions,'" *Metro Found. Contractors, Inc.* v. *Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (summary order) (quoting *West* v. *Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  Such extreme circumstances may exist where "a court finds 'willfulness, bad faith, or any fault' by the non-compliant litigant." *Agiwal*, 55 F.3d at 302 (quoting *Bobal* v. *Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)); *accord Ayinola*, 855 F. App'x at 32.

"Rule 37 authorizes a range of sanctions, from mild to severe."  *In re Gravel*, 6 F.4th 503, 515 (2d Cir. 2021).  Three are relevant here.  *First*, the Court *must* order Plaintiff to reimburse Defendants' reasonable expenses, including attorneys' fees and costs, "incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other

31

circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).

*Second*, "[i]f monetary sanctions are not sufficient, more stringent orders may

be issued, including adverse inference orders, [and] preclusion orders[.]"

*Shanghai Weiyi Int'l Trade Co.* v. *Focus 2000 Corp.*, No. 15 Civ. 3533 (CM)

(BCM), 2017 WL 2840279, at *10 (S.D.N.Y. June 27, 2017) (internal quotation

marks omitted).  *Third*, the Court may also "inform the jury of the party's

failure" to comply with its orders.  *In re Gravel*, 6 F.4th at 515.

Here, the Court finds that sanctions short of dismissal are sufficient to

address Plaintiff's noncompliance.  Given Plaintiff's supplemental productions

between November 2020 and May 2021 (*see* Pl. Opp. 4-6), Defendants are now

in possession of all the discoverable documents that remain in Plaintiff's

possession (*see* Pl. Aff. ¶ 13).  The Court pauses here to note that despite this

progress, Plaintiff's production is not complete, as Defendants do not (and

seemingly will never) possess the job search documents that Plaintiff admits to

deleting.  (*See* Def. Br. 9-10).  Additionally, as Defendants suggest, there

remains reason to be skeptical that Plaintiff has in fact produced *all* the

discoverable documents in her possession.  (Def. Reply 6).[5]  Based on the

record before it, however, the Court cannot find that Plaintiff's representation

---

[5]     Defendants argue that "[g]iven [Plaintiff's] history of misrepresentations to the Court
        and Defendants, she simply cannot be trusted when she represents that she has now
        searched for responsive documents or does not possess any such documents."  (Def.
        Reply 6).  The Court agrees that Plaintiff's conduct throughout this litigation supplies
        reason to doubt the accuracy of her representation that she has produced all
        outstanding documents in her possession.  (*See* Pl. Aff. ¶ 13).  Nevertheless, the Court
        declines to dismiss the case on this ground because the record does not clearly
        establish that Plaintiff is continuing to withhold discoverable documents.  Of course, if
        Plaintiff's representation is later shown to be false, then the Court will revisit the issue
        and impose additional sanctions, including, if appropriate, dismissal of the case.

that she has produced all responsive documents in her possession is false. (*See* Pl. Aff. ¶ 13).  Thus, the prejudice caused by Plaintiff's noncompliance consists of Defendants': (i) inability to depose Plaintiff on issues raised by the documents she disclosed after her initial deposition; (ii) lack of access to Plaintiff's deleted job rejection notices; and (iii) costs incurred attempting to secure Plaintiff's compliance with the Court's orders.  The Court finds that these harms can be addressed through a combination of less drastic sanctions.

*First*, Defendants' inability to depose Plaintiff on issues raised by her untimely disclosures can be remedied by allowing Defendants to depose, at Plaintiff's expense, Plaintiff and the individuals with whom she exchanged text messages related to the case on any issues raised by the disclosures.  *See Town & Country Linen Corp.* v. *Ingenious Designs LLC,* No. 18 Civ. 5075 (LJL), 2020 WL 3472597, at *10 (S.D.N.Y. June 25, 2020) (reopening discovery to allow additional depositions "with fees and costs for those depositions to be paid by" the noncompliant party); *Gilmore* v. *City of New York*, No. 19 Civ. 6091 (GBD) (BCM), 2020 WL 7480620, at *5 (S.D.N.Y. Dec. 18, 2020) (ordering plaintiff to sit for deposition on issues raised by late disclosures); *Syntel Sterling Best Shores Mauritius Ltd.* v. *TriZetto Grp.*, 328 F.R.D. 100, 125 (S.D.N.Y. 2018) ("The Court also finds that reopening discovery at Plaintiffs' expense is appropriate to allow Defendants to obtain additional discovery regarding the newly produced documents.").

*Second*, Defendants' inability to review Plaintiff's deleted job rejection notices can be addressed by allowing Defendants to present evidence at trial

33

that Plaintiff deleted the notices.  *See Leidig* v. *Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at \*14 (S.D.N.Y. Dec. 19, 2017) (permitting defendant to "present evidence to the jury that plaintiffs disabled the websites listed in their Initial Disclosure after litigation was threatened and at a time when they were legally obligated to preserve those websites").

*Third*, the attorneys' fees and costs Defendants incurred in securing Plaintiff's compliance with the September 9 Order can be reimbursed by Plaintiff.  *See Joint Stock Co. Channel One Russ. Worldwide* v. *Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2019 WL 4727537, at \*28 (S.D.N.Y. Sept. 26, 2019), *aff'd sub nom. Joint Stock Co. "Channel One Russ. Worldwide"* v. *Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020) ("Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." (quoting *Seena Int'l, Inc.* v. *One Step Up, Ltd.*, No. 15 Civ. 1095 (PKC) (BCM), 2016 WL 2865350, at \*11 (S.D.N.Y. May 11, 2016))); *Gurvey* v. *Cowan, Liebowitz & Lathman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2014 WL 715612, at \*6 (S.D.N.Y. Feb. 25, 2014) (finding that ordering noncompliant party to pay attorneys' fees and forfeit right to enforce discovery requests "is sufficient both to provide restitution to defendants for plaintiff's improper behavior and to deter plaintiff from disobeying any future discovery Orders"); *see also* Fed. R. Civ. P. 16(f)(2) (providing that "the court must order" the noncompliant party to pay the opposing party's reasonable expenses).

e.   **The Availability of Less Severe Sanctions Make Dismissal Inappropriate In this Case**

Based on its evaluation of the above factors, the Court concludes that dismissal would neither be "just" nor "relate to the particular claim to which the [scheduling] order was addressed." *See M/V Fakredine*, 951 F.2d at 1366. Plaintiff's actions have delayed this case, forced Defendants to incur additional attorneys' fees and costs, and deprived Defendants of the deleted job rejection notices.  The Court finds, however, that these harms can be remedied by a combination of sanctions less drastic than dismissal.  "Accordingly, while 'the misconduct here was significant,'" dismissal "'would be excessive.'" *Mintz Fraade L. Firm, P.C.* v. *Brady*, No. 19 Civ. 10236 (JMF), 2021 WL 1759003, at *2 (S.D.N.Y. May 4, 2021) (quoting *Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at *16); *see also Ayinola*, 855 F. App'x at 33-34 (finding that district court abused its discretion by "issuing harsh sanctions where lesser efficacious alternatives are available"); *Ocello* v. *White Marine, Inc.*, 347 F. App'x 639, 642-43 (2d Cir. 2009) (summary order) (reversing dismissal of case where record did not support the district court's finding that lesser sanctions were insufficient to address noncompliance); *see also Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO* v. *City of New York*, No. 18 Civ. 4476 (LJL) (SLC), 2021 WL 1750866, at *12 (S.D.N.Y. Mar. 31, 2021) (declining to impose a sanction that "would amount to a disproportional 'windfall'"), *report and recommendation adopted*, No. 18 Civ. 4476 (LJL), 2021 WL 2827347 (S.D.N.Y. July 7, 2021).

35

### 3. The Court Declines to Preclude Plaintiff's Evidence

As an alternative to dismissal, Defendants move to preclude Plaintiff from (i) seeking front or back pay as a result of her deletion of emails related to her job search and (ii) introducing testimony from, or evidence related to, the friends with whom she exchanged text messages about this case as a result of her failure to provide those messages prior to November 6, 2020. (Def. Br. 19-21). In response, Plaintiff argues Defendants' proposed remedies are too severe for substantially the same reasons she offered in opposition to their request for dismissal. (Pl. Opp. 13-18). For many of the same reasons that the Court declined to dismiss the case, it also declines to preclude Plaintiff's evidence.

### a. The Untimely Text Messages

The Court begins with Plaintiff's late disclosure of the text messages. "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Gidora* v. *Howmedica Osteonics Corp.*, No. 16 Civ. 5774 (KMK), 2019 WL 1129127, at *3 (S.D.N.Y. Mar. 12, 2019) (quoting *Outley* v. *City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)). "When considering whether to exclude evidence pursuant to Rule 37, courts in this Circuit must consider '[i] a party's explanation for the failure to comply with the Federal Rules, [ii] the importance of the evidence, [iii] the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and [iv] the possibility of a continuance.'" *Richmond* v. *Gen. Nutrition Centers Inc.*, No. 08 Civ. 3577 (PAE) (HBP), 2012 WL 762307, at *6 (S.D.N.Y.

Mar. 9, 2012) (quoting *Design Strategy Inc.* v. *Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).  Given the preceding analysis of Plaintiff's noncompliance and its effect on the case, the Court eschews a second accounting of Plaintiff's actions and focuses here on the determinative factors in its analysis.

Here, the Court finds most critical the fact that the prejudice caused by Plaintiff's late disclosure of the messages is minimal.  As discussed above, the lesser sanction of reopening fact discovery at Plaintiff's expense will provide Defendants with ample time to depose Plaintiff on the contents of the messages prior to summary judgment practice or trial.  Accordingly, the Court declines to preclude Plaintiff from introducing evidence related to Gilbert Rios, Brent Graham, Sharon Stovall, Yusuf Ramadan, or Tasha Holley.  *See Town & Country Linen Corp.*, 2020 WL 3472597, at *10 (reopening discovery at noncompliant party's expenses to allow additional depositions on issues raised by late disclosures); *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (observing that where discovery is untimely produced, the noncompliant party "should sustain liability for breach its discovery obligations," but the opposing party "should not obtain a windfall"); *Ramirez* v. *Pride Dev. & Const.*, 244 F.R.D. 162, 165 (E.D.N.Y. 2007) (recommending lesser sanctions where preclusion would "be a windfall for the plaintiff").

### b.     The Deleted Job Notices

Plaintiff's deletion of the electronic job rejection notices, as contrasted with her noncompliance with the September 9 Order, implicates Federal Rule of Civil Procedure 37(e), which provides in relevant part:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may … instruct the jury that it may or must presume the information was unfavorable to the party[.]

Fed. R. Civ. P. 37(e).

Here, the Court finds that sanctions are appropriate under Rule 37(e).  At the time Plaintiff deleted the notices, she had retained counsel (*see* Pl. Dep. 104:10-20; Def. Br. 10) and "should have known" that the notices would be relevant to her claims.  *Fujitsu Ltd.* v. *Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Hughes* v. *City of New York*, No. 18 Civ. 9380 (MKV), 2021 WL 4295209, at *9 (S.D.N.Y. Sept. 21, 2021) (stating that "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence" and observing that "[i]n this context, 'relevance' means relevance for purposes of discovery, which is an extremely broad concept" (internal quotation marks omitted)).  Plaintiff is now unable to retrieve or restore the deleted notices, and her actions have prejudiced Defendants by depriving them of evidence bearing on the extent to which she mitigated her damages.  *See Walsh* v. *Scarsdale Union Free Sch. Dist.*, No. 16 Civ. 3558 (NSR), 2019 WL 6789581,

at *4 (S.D.N.Y. Dec. 12, 2019) (duty to mitigate damages applies to Title VII claimants); *see also Charlestown Cap. Advisors, LLC* v. *Acero Junction, Inc.*, 337 F.R.D. 47, 65 (S.D.N.Y. 2020) ("Rule 37(e)(1), as amended, does not place a burden of proving or disproving prejudice on one party or the other....  The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." (internal quotation marks omitted)).

The Court will not minimize the severity of Plaintiff's actions, or its frustration with her failure to alert either Defendants or the Court to the fact that she had deleted the notices until her deposition, but it finds that there are critical factors that weigh against preclusion in this case.  The Court first notes that Plaintiff deleted the notices prior to filing her claims, and testified that she did so because she was frustrated that she had not received the jobs.  (Pl. Dep. 104:20-106:25; *see also* Def. Br. 9).  Moreover, Plaintiff has produced a substantial number of similar job rejection notices.  (*See* Pl. Opp. 5; Def. Reply 5).  These circumstances do not evince an intent to deprive Defendants or the Court of relevant evidence. *See Leidig*, 2017 WL 6512353, at *11 ("[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence."); *see also Goonewardena* v. *N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 349 (S.D.N.Y. 2017) (declining to award an adverse inference where Plaintiff did not engage in "the type of evasive or obstructive behavior the spoliation doctrine was designed to prevent"), *aff'd sub nom. Goonewardena* v. *N.Y. State Workers' Comp. Bd.*, 788 F. App'x 779 (2d Cir. 2019) (summary

order). The Court further notes that, in contrast with Defendants' cited case (*see* Def. Reply 5), Plaintiff has not deprived Defendants of central evidence on the issue of liability. *See Beers* v. *Gen. Motors Corp.*, No. 97 Civ. 482 (NPM) (DNH), 1999 WL 325378, at *6 (N.D.N.Y. May 17, 1999) (ordering preclusion in design defect case where "the missing or spoliated item ... is not circumstantial evidence, but the actual part that failed"). In view of these factors, the Court finds that precluding Plaintiff's claims altogether would risk providing Defendants with an unjust windfall. *See Fashion Exch. LLC* v. *Hybrid Promotions, LLC*, No. 14 Civ. 1254 (SHS) (OTW), 2019 WL 6838672, at *6 (S.D.N.Y. Dec. 16, 2019) ("[T]he Court is not required to issue sanctions under [Rule 37](e)(2) if the sanctions are disproportional to the prejudice.").

After carefully reviewing the record before it, and in light of its familiarity with the claims and defenses both parties have raised over the course of this case, the Court finds that allowing Defendants to present evidence that Plaintiff deleted the rejection notices will address the prejudice to Defendants and deter Plaintiff from committing similar misconduct in the future. *See Fashion Exch. LLC*, 2019 WL 6838672, at *7 (permitting defendant "to present evidence at trial regarding the spoliation of damages-related ESI"); *Karsch* v. *Blink Health Ltd.*, No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019) ("[S]uch a sanction (as distinguished from a mandatory or permissive adverse inference instruction) is permitted under Rule 37(e)(1) without any predicate finding of intent to deprive."). Given that this less severe sanction is sufficient to serve the purposes of both the spoliation doctrine and

Rule 37, the Court declines to preclude Plaintiff from pursuing her back or front pay claims.

### 4.    The Sanctions Imposed by the Court

As previewed in the foregoing sections, the Court imposes the following sanctions on Plaintiff for her failure to comply with its September 9 Order.

*First*, the Court will partially reopen fact discovery.  Defendants will be permitted to depose Plaintiff for the second time on any issues raised by her November 23, 2020, January 21, 2021, and May 25, 2021 supplemental disclosures.  (*See* Pl. Opp. 4-6 (listing the supplemental disclosures)). Defendants will also be permitted to depose Gilbert Rios and Brent Graham.

*Second*, the Court will award Defendants their reasonable attorneys' fees and costs incurred in (i) filing their September 30, 2020 Pre-Motion Letter (Defendants' Pre-Motion Letter); (ii) filing their motion for discovery sanctions and their reply to Plaintiff's opposition to the same (Def. Br; Def. Reply); and (iii) conducting the depositions authorized above.

*Third*, the Court will allow Defendants to present evidence at trial that Plaintiff deleted the electronic job rejection notices.  *See Doubleline Cap. LP* v. *Odebrecht Fin., Ltd.*, No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527, at *9 (S.D.N.Y. Mar. 30, 2021) (awarding similar sanctions); *Leidig*, 2017 WL 6512353, at *13-14 (same).

*Fourth*, the Court will order Plaintiff to produce to the Court *in camera* (i) all documents reflecting her name change and (ii) a sworn declaration by her counsel stating whether Plaintiff was named as a party in either civil or

criminal actions under her prior name.  If Plaintiff has participated in litigation under her previous name, Plaintiff's counsel shall also provide in his declaration a summary of the nature of such litigation and its outcome.

Finally, the Court notes that this is the second time this year that it has awarded sanctions in a case brought by the Derek Smith Law Group, PLLC ("DSLG").  *See Doe 1* v. *E. Side Club, LLC.*, No. 18 Civ. 11324 (KPF), 2021 WL 2709346, at *27 (S.D.N.Y. July 1, 2021), *reconsideration denied*, No. 18 Civ. 11324 (KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021).  In *John Doe I,* the Court stated that "although the Court does not now sanction Mr. Cohen or DSLG for obstructive conduct that it believes is sanctionable, it warns them that future misconduct of this kind will be considered sanctionable by this Court and sister courts in this District."  *Id.*  The Court believes that there are important differences between *Doe I* and this case that make imposing sanctions on Plaintiff's counsel, Zachary Holzberg, inappropriate here. Nonetheless, the Court is disturbed by Mr. Holzberg's inattention to this case. Mr. Holzberg has shown a disregard for the Court's orders and deadlines throughout this litigation that will not be tolerated in this or any future cases before the Court.  DSLG should not expect a third warning from this Court before it will be sanctioned for similar conduct in the future.

## CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Defendants' motion for discovery sanctions.  The Court denies Defendants' motion insofar as it seeks to dismiss the case or to preclude Plaintiff from

(i) seeking front or back pay or (ii) introducing evidence related to Gilbert Rios, Brent Graham, Sharon Stovall, Yusuf Ramadan, or Tasha Holley. The Court grants the motion insofar as it seeks reasonable attorneys' fees and costs and other just relief, including the limited reopening of fact discovery and the ability to introduce at trial evidence of Plaintiff's deletion of the electronic job rejection notices.

Plaintiff shall submit to the Court's chambers email address, Failla_NYSDChambers@nysd.uscourts.gov, the declaration from her counsel addressing whether she was named in civil or criminal litigation under her prior name on or before **December 1, 2021**.

Defendants may complete any depositions authorized by this Opinion on or before **January 3, 2022**. Additionally, and with particular respect to the Court's sanctions award, Defendants may submit contemporaneous billing records, other documented expenses, and supporting papers in support of an award of attorneys' fees and costs on or before **January 31, 2022**. Plaintiff shall submit her opposition to Defendants' request, if any, on or before **February 28, 2022**. A reply brief is not authorized.

Nothing in this Opinion prevents the parties from seeking an amicable resolution in connection with the payment of attorneys' fees and costs. If the parties reach such a resolution, they are directed to file a joint letter, no later than **January 31, 2022**, advising the Court of such a resolution.

The parties shall confer and submit a joint proposed summary judgment briefing schedule within 30 days of this Opinion.

The Clerk of Court is directed to terminate the motion at docket entry 64.

The Clerk of Court is further directed to strike the Opinion and Order at docket

entry 72.  This Amended Opinion and Order supersedes the Court's

October 29, 2021 Opinion and Order.

SO ORDERED.

Dated:      December 17, 2021
            New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge

44